95 P.3d 69

Jonathan WALKER and Amy Walker, husband and wife, Byron Meng and Glea Meng, husband and wife, Max Meng, Ronald Hutchings, Brent Meng, Guy Meng and Daryl Meng, husband and wife, Anita Jenne, Gary Park and Cheryl Park, husband and wife, Paul Drake and Luella Drake, husband and wife, Plaintiffs–Respondents,

v.

Ken BOOZER and Lisa Boozer, husband and wife, Defendants–Appellants.

No. 29065.

Supreme Court of Idaho, Boise, May 2004 Term.

July 13, 2004.

Franklin N. Smith Jr., Pike & Smith, PA, Idaho Falls, for appellants. Franklin N. Smith Jr. argued.

Scott R. Hall, Anderson, Nelson, Hall, Smith, Idaho Falls, for respondents. Scott R. Hall argued.

KIDWELL, Justice.

This is an appeal from a judgment defining and fixing the width of an easement that allows ingress and egress across the servient estate. The judgment of the district court is affirmed in part and reversed in part.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

During the 1960's, the road in question, Ruud Road, was an unimproved mountain road consisting of two tire tracks. Over the years, Ruud Road was improved. By the mid-eighties, Ruud Road had been graded, graveled and was approximately eleven to twelve feet wide at most locations. In the mid-eighties, the Bonneville County planning and zoning administrator required some of the property that Ruud Road traversed be platted into subdivisions which complied with the county zoning and subdivision ordinances. The property was platted into several subdivisions, including the Ramey–Keller, Quaker Haven Estates, and the Ruud Subdivisions.

In the early to mid-nineties, as an accommodation to the Quaker Haven Subdivision residents, the Wiemers, who owned Lot 49 of the Ruud Subdivision, cut approximately three feet into the sloping bank on their property right before the turnoff on Ruud Road onto Quaker Haven Road, thereby allowing people to access Quaker Haven Road from the uphill direction on Ruud Road.

Jonathan and Amy Walker (Walkers) became interested in purchasing a lot in the Quaker Haven Subdivision in 1994. Prior to purchasing the lot, Mr. Walker measured the width of Ruud Road approximately six feet downhill from the concrete post at the intersection of Ruud Road and Quaker Haven Road. The northwest edge of the traveled surface of Ruud Road was twenty-two feet northwest of the Ramey–Keller Subdivision at that location. The useable width of the surface of Ruud Road at that point was approximately seventeen and a quarter feet. On November 7, 1994, Lot 4, Block 2, of the Quaker Haven Estates Subdivision was deeded to the Walkers.

Kenneth and Lisa Boozer (Boozers) purchased Lot 49 of the Ruud Subdivision from the Wiemers in April of 2001, and during the late summer of 2001 the Boozers placed rocks along Ruud Road near its intersection with Quaker Haven Road. The rocks narrowed Ruud Road so that the northwest edge of the traveled surface was approximately sixteen and a quarter feet from the Ramey–Keller Subdivision. Placement of the rocks limited the useable width of Ruud Road to approximately eleven or twelve feet and made reasonable access to Quaker Haven Road while traveling uphill on Ruud Road impossible. In November of 2001, the Booz-

ers replaced the rocks with concrete barriers. The concrete barriers continued to limit the width of the useable roadway surface to approximately eleven or twelve feet. The Boozers also placed a barrier across their driveway, which prohibited people from accessing Quaker Haven Road by turning their cars around in the Boozers' driveway and approaching Quaker Haven Road from the downhill direction.

The Plaintiffs/Respondents Jonathan Walker, et al. (Quaker Haven Owners), owners of property in the Quaker Haven Estates Subdivision, brought suit on November 29, 2001, to define and fix the width of a deeded road easement for ingress and egress across property owned by the Defendants/Appellants, the Boozers, in the adjacent Ruud Subdivision. The Boozers counterclaimed for an order enjoining the Quaker Haven Owners from widening the road easement beyond the original grant, and for contribution from the Quaker Haven Owners to maintain the easement. In their Answer and Counterclaim, the Boozers admitted that a deeded easement existed at the location in question.

On December 6, 2001, the Quaker Haven Owners filed a Motion For Preliminary Injunction seeking removal of several concrete barriers the Boozers had placed at the edge of the roadway easement to limit further encroachment on their property. A hearing on the Motion was held on December 13, 2001, after which the district court granted the preliminary injunction on the condition that the Quaker Haven Owners post a $10,000 bond.

After trial, the district court found that there was a deeded grant of easement for the benefit of residents of Quaker Haven Subdivision. The district court also found that since the width of the easement was not defined in the deed granting the easement or the Ruud Subdivision plat recorded with the County on July 27, 1988, the court was authorized to prescribe the width of the easement so as to provide "reasonable access" to the owners within Quaker Haven Subdivision. The district court then fixed the width of the easement near the intersection of Ruud Road and Quaker Haven Road at twenty-four feet, with two feet of the easement reserved for landscaping to prevent erosion.

The district court denied the Boozers' Counterclaim for contribution for maintenance of the easement.

On July 9, 2002, the Boozers filed a Motion to Alter or Amend Judgment, seeking a correction of what the Boozers alleged were legal and factual errors in the district court's Findings of Fact, Conclusions of Law and Judgment. On September 20, 2002, the district court entered its Memorandum Decision Re: Motion to Alter or Amend Judgment, affirming its previous Findings of Fact, Conclusions of Law and Judgment, and awarded attorney fees to the Quaker Haven Owners pursuant to I.R.C.P 54(e)(1) and I.C. § 12–121 for fees incurred in defending against the Boozers' Motion to Alter or Amend Judgment. The Boozers timely filed their appeal to this Court.

## II.

### STANDARD OF REVIEW

 This Court will only set aside a trial court's findings of fact if they are clearly erroneous. I.R.C.P. 52(a); *Neider v. Shaw*, 138 Idaho 503, 506, 65 P.3d 525, 528 (2003). "In deciding whether findings of fact are clearly erroneous, this Court determines whether the findings are supported by substantial, competent evidence." *Neider*, 138 Idaho at 506, 65 P.3d at 528. "Findings based on substantial, competent evidence, although conflicting, will not be disturbed on appeal." *Id.* This Court "exercises free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found." *Conley v. Whittlesey*, 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999). "Whether to grant or deny a preliminary injunction is a matter for the discretion of the trial court." *Brady v. City of Homedale*, 130 Idaho 569, 572, 944 P.2d 704, 707 (1997).

## III.

### ANALYSIS

A. **The Trial Court Did Not Err In Defining The Scope Of The Ruud Road Easement.**

 "Where a conveyance of a right of way does not definitely fix its location, the

grantee is entitled to a convenient, reasonable, and accessible way within the limits of the grant." *Quinn v. Stone,* 75 Idaho 243, 246, 270 P.2d 825, 827 (1954). The general rule concerning easements is that the right of an easement holder may not be enlarged and may not encompass more than is necessary to fulfill the easement. *Abbott v. Nampa School Dist. No. 131,* 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991).

> The use of an easement claimed under a grant or reservation must be confined strictly to the purposes for which it was granted or reserved, and in compliance with any restrictions imposed by the terms of the instrument. Where the grant or reservation of an easement is general in its terms, use of the easement includes those uses which are incidental or necessary to the reasonable and proper enjoyment of the easement, but is limited to those that burden the servient estate as little as possible. In other words, an easement granted or reserved in general terms, without any limitations as to its use, is one of unlimited reasonable use. It is not restricted to use merely for such purposes of the dominant estate as are reasonably required at the time of the grant or reservation, but the right may be exercised by the dominant owner for those purposes to which that estate may be subsequently devoted. Thus, there may be an increase in the volume and kind of use of such an easement during the course of its enjoyment.

*Id.* (quoting 25 *Am.Jur.2d Easements and Licenses* § 74, pp. 479–80 (1966)).

 "The question of whether a particular easement is reasonable and commensurate with the intention of the parties when the easement was granted is generally a question of fact for the trial court, and its findings will not be disturbed if supported by substantial and competent evidence." *Conley,* 133 Idaho at 270, 985 P.2d at 1132.

The district court determined that the Plaintiffs were entitled to reasonable access to Quaker Haven Road within the limits of the grant, and then provided a metes and bounds description of the easement. In defining the width of the easement, the district court specified that no more than twenty-two feet of the width of the easement may be used as road surface, and the remaining two feet of the easement at its widest location should be landscaped and contoured from the road surface to the top of the adjacent embankment with natural vegetation to prevent erosion.

The width of the roadway easement was not defined on the Ruud Subdivision plat as the testimony of Steven Serr (Serr), the Bonneville County Planning and Zoning Administrator, showed. The Boozers' own expert witness, Richard Byrem (Byrem), also testified that there was not a given width for the roadway easement on the Ruud Subdivision plat. Byrem also testified that he could not accomplish a scale reading of Ruud Road as it travels along Lot 49. In addition, William Peterson, who owned Lot 51 of the Ruud Subdivision in 1988, and who signed the Owner's Certificate on the Ruud Subdivision plat, testified that at that time he never reviewed or discussed any dimensions of Ruud Road.

Jonathan Walker (Walker) testified that in 1994, he measured twenty-two feet from the distance of the usable roadway surface from Keller's property (beginning a few feet south of the corner at the lower end of the cement curve) to the historical edge of the roadway where the embankment began. Walker also testified that the usable roadway was twenty-two feet wide and that the width had not changed over the last twenty-five years.

Even though the Boozers cite to conflicting testimony during the trial, the above testimony during trial and the testimony elicited during the preliminary injunction hearing provide substantial and competent evidence for the district court's conclusion that the reasonable access easement should be twenty-two feet of road surface in width, plus two feet of the embankment for a total width of twenty-four feet, and is within the boundaries of the historical use of the easement.

**B. The Trial Court Did Not Err In Denying The Boozers' Counterclaim For Maintenance Of The Easement.**

 The owner of a servient estate has no duty to maintain the easement. *Gib-*

*bens v. Weisshaupt*, 98 Idaho 633, 640, 570 P.2d 870, 877 (1977); *Coulsen v. Aberdeen–Springfield Canal Co.*, 47 Idaho 619, 630, 277 P. 542, 546 (1929). The duty of maintaining the easement rests with the easement owner (i.e., dominant estate), even when the servient landowner uses the easement. *Sellers v. Powell*, 120 Idaho 250, 251, 815 P.2d 448, 449 (1991). That duty requires the easement owner maintain, repair, and protect the easement so as not to create an additional burden on the servient estate or an interference that would damage the land, such as flooding of the servient estate. *Conley*, 133 Idaho at 271, 985 P.2d at 1133; *Gibbens*, 98 Idaho at 640, 570 P.2d at 877; *Rehwalt v. American Falls Reservoir District # 2*, 97 Idaho 634, 636, 550 P.2d 137, 139 (1976); *Pioneer Irr. Dist. v. Smith*, 48 Idaho 734, 738, 285 P. 474, 475 (1930). This duty to maintain does not mean that the easement owner is required to maintain and repair the easement for the benefit of the servient estate. *Rehwalt*, 97 Idaho at 636, 550 P.2d at 139.

As the above rule shows, the easement owners are not required to maintain Ruud Road for the benefit of the Boozers. It follows then, that absent a showing that the easement owners' maintenance of the easement created an additional burden or interference with the servient estate, the servient estate cannot dictate the standard by which the easement should be maintained, expend funds to maintain it to the level desired by the servient estate and then seek reimbursement for those expenditures and contribution for future expenditures from the easement owners. The testimony cited by the Boozers shows they expended funds in the past to gravel Ruud Road, that they had not been reimbursed for those expenditures, and that they expected to expend funds in the future to maintain the road. However, the Boozers do not establish that the manner in which the easement owners maintained the easement created an additional burden on the Boozers' servient estate or created an interference that would damage the Boozers' land, thereby justifying contribution for maintenance.

█ Nevertheless, the Boozers argue the district court's decision to deny their counterclaim for contribution was in error be-

cause the district court cited to 28A C.J.S. *Easements* § 170 (1996) for the proposition that "[W]hen the dominant tenant and the servient tenant both use an easement, the court may apportion the cost of repair between them accordingly." Although the district court based its denial of the Boozers' counterclaim in part on this proposition, that proposition is not the law in Idaho. Nonetheless, "if a district court reaches a correct result by an erroneous theory, this Court will affirm the order upon the correct theory." *McKinney v. State*, 133 Idaho 695, 700, 992 P.2d 144, 149 (1999) (citing *State v. Avelar*, 129 Idaho 700, 704, 931 P.2d 1218, 1222 (1997)). Based on the above discussion, the district court did not err in denying the Boozers' counterclaim for contribution because the Boozers failed to show the easement owners' maintenance of the easement created an additional burden or an interference that would damage the servient estate.

### C. The Trial Court Did Not Err In Granting The Preliminary Injunction.

█ The Boozers claim the district court erred by granting the preliminary injunction. An appellate court will not interfere with the trial court's decision to grant or deny a preliminary injunction absent an abuse of discretion. *Harris v. Cassia County*, 106 Idaho 513, 517, 681 P.2d 988, 992 (1984). When determining whether the trial court has committed an abuse of discretion, this Court asks whether the trial court correctly perceived the issue as one of discretion, acted within the boundaries of its discretion consistent with applicable legal standards, and reached its decision by an exercise of reason. *Brady*, 130 Idaho at 572, 944 P.2d at 707. The burden of showing the trial court abused its discretion rests with the appellant. *Id.*

The district court perceived the issue as one of discretion when it cited to I.R.C.P. 65, which gives the district court the discretion to grant or deny a preliminary injunction. As per this rule, the granting of the preliminary injunction was within the bounds of its discretion and consistent with applicable legal standards. In reaching its decision, the

district court exercised reason when it held that the injunction was needed because "the continuance of or allowing those [the Boozers'] barriers to stay in place would produce waste." The waste envisioned by the district court was that which might result to the Quaker Haven Owners because the barriers restricted the Quaker Haven Owners' reasonable access to their property. Therefore, the district court did not err by granting the preliminary injunction because the Boozers have not shown an abuse of discretion by the district court.

### D. The District Court's Award Of Attorney Fees Is Reversed.

The district court cited I.R.C.P. 54(e)(1) and I.C. § 12–121 as the basis for awarding attorney fees incurred by the Quaker Haven Owners in defending against the Boozers' Motion to Alter or Amend the Judgment. Pursuant to I.R.C.P. 54(e)(1), attorney fees may be granted under I.C. § 12–121 only when a court finds from the facts presented to it, "that the *case* was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1) (emphasis added). The denial of a motion does not fall within the scope of the authority cited by the district court because a single motion does not comprise an entire case. In other words, I.C. § 12–121 applies to cases as a whole and not to individual motions. *See Turner v. Willis,* 119 Idaho 1023, 1025, 812 P.2d 737, 739 (1991); *Mgmt. Catalysts v. Turbo W. Corpac, Inc.,* 119 Idaho 626, 630, 809 P.2d 487, 491 (1991); *Magic Valley Radiology Assoc. P.A. v. Prof'l Bus. Servs., Inc.,* 119 Idaho 558, 563, 808 P.2d 1303, 1308 (1991). Therefore, the award of attorney fees is reversed because the authority cited by the district court does not support such an award.

### E. Neither Party Is Entitled To Attorney Fees On Appeal.

Both parties argue they are entitled to attorney fees on appeal. Idaho Code § 12–121 allows a court, in the exercise of its discretion, to award attorney fees to the prevailing party but only if the court determines that "the case was brought, pursued or de-

fended frivolously, unreasonably or without foundation." *Mutual of Enumclaw Ins. v. Pedersen,* 133 Idaho 135, 139, 983 P.2d 208, 212 (1999) (quoting *Maslen v. Maslen,* 121 Idaho 85, 92–93, 822 P.2d 982, 989–90 (1991)).

Based on the above discussion, the Boozers are not the prevailing party and, therefore, not eligible for an award of attorney fees pursuant to I.C. § 12–121. The Respondents are also not awarded attorney fees because the Boozers' appeal to this Court was not frivolous or without foundation because they raised meritorious legal arguments regarding the district court's conclusion pertaining to the width and maintenance of the easement.

### IV.

### CONCLUSION

The judgment of the district court is affirmed in part and reversed in part. The district court's conclusion that the easement should be 22 feet of road surface in width, plus two feet of the embankment, for a total width of 24 feet, and that it is within the boundaries of the historical use of the easement is supported by substantial and competent evidence. The district court did not err in denying the Boozers' counterclaim for contribution because the Boozers failed to show the easement owners' maintenance of the easement created an additional burden or an interference that would damage the servient estate. The district court did not err by granting the preliminary injunction because the Boozers failed to show the district court abused its discretion. The district court's award of attorney fees is reversed because the authority cited by district court does not support such an award. No attorney fees are awarded on appeal. Costs are awarded to the Respondents.

Chief Justice TROUT and Justices SCHROEDER, EISMANN, and BURDICK concur.