## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 48876

KENT G. WHITHAM and LINDA M. WHITHAM, Trustees of the KENT G. WHITHAM AND LINDA M. WHITHAM REVOCABLE TRUST,

    Plaintiffs/Appellants/ Cross-respondents,

v.

JEFFREY DAVID CREAMER, an individual,

    Defendant/Respondent/ Cross-appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, September 2022 Term**

**Opinion Filed: March 2, 2023**

**Melanie Gagnepain, Clerk**

---

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Barbara Buchanan, District Judge.

The <u>judgment</u> of the district court is <u>affirmed in part</u> and <u>vacated in part</u>. The case is <u>remanded</u>.

Stephen Snedden, Snedden Law, P.C., Sandpoint, for plaintiffs/appellants/cross-respondents, Kent and Linda Whitham, trustees of the Kent G. Whitham and Linda M. Whitham Revocable Trust.

Rex A. Finney, Finney Finney & Finney, P.A., for defendant/respondent/cross-appellant, Jeffrey David Creamer.

---

STEGNER, Justice.

This is an appeal from a bench trial that sought to determine the respective rights and responsibilities of the property owners whose properties are either benefited or encumbered by an express easement.[1] Kent and Linda Whitham, trustees of the Kent G. Whitham and Linda M. Whitham Revocable Trust, own a property that benefits from the use of a forty-foot private road easement that they and several neighbors use to access their homes in rural Bonner County. Jeff Creamer owns a portion of the land that is encumbered by the easement. The easement consists of a dirt road that is prone to erosion in the spring following snow melt and heavy rainfall. Because

---

[1] Historically, properties that benefit from the use of an easement have been called "dominant estates," and properties that are encumbered by an easement have been called "servient estates."

1

their property benefits from the easement, the Whithams take much of the responsibility for the maintenance of the road.

In an effort to combat erosion, Creamer installed a French drain across a portion of the roadway that runs on his property. Kent Whitham then filled in the drain with dirt, rendering it inoperable. Creamer then re-installed the French drain. This back-and-forth conduct repeated itself several times and ultimately led the parties to district court in Bonner County when the Whithams sued Creamer. Following the bench trial below, the district court permitted Creamer to install a French drain on a portion of the roadway easement that encumbers his property and prohibited the Whithams from interfering with the drain. Both parties timely appealed. For the reasons discussed below, we affirm in part and vacate in part the judgment of the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The easement in dispute in this case was created by the recording of a survey in Bonner County. In 1996, the prior owners of both the Whithams' and Creamer's properties, the Stangels, recorded a Road Maintenance Agreement (the "Agreement"). The Agreement defined "a 40 foot Private road easement for the purposes of ingress, egress, and utilities[.]" (Capitalization in original.) This easement is referred to by the parties and the district court as "Lightning Peak Road" or "The Private Road Easement" (and will be referred to here as "the Private Road Easement"). The Private Road Easement is an old, unpaved logging road. A portion of the Private Road Easement runs through Creamer's property. The Agreement further specified that "[a]ll costs of maintenance, improvements or relocation of said road shall be borne in equal shares by future owners of adjoining lands using said road [the Private Road Easement]." The Stangels transferred title to a portion of their property along the Private Road Easement to Kent and Linda Whitham ("the Whithams") via warranty deed in September 2007. The Whithams later conveyed the property to the Kent G. Whitham and Linda M. Whitham Revocable Trust ("the Trust") via quitclaim deed.

At the time the Agreement was recorded, the Stangels also owned the property that now belongs to Jeff Creamer. The property changed hands several times prior to its sale to Creamer, who ultimately acquired it in 2013 via a quitclaim deed.

The Private Road Easement is unpaved and, therefore, subject to erosion caused by rainfall,

2

snow melt, and heavy traffic. In 2009, Kent Whitham purchased a tractor to maintain the road.[2] Most of Kent's maintenance of the Private Road Easement involves "smoothing and grading the road surface[] and plowing snow from the road." He can also attach a box scraper to the tractor, if needed, that "can be adjusted to vary the level at which the grading of the road surface can take[] place." Kent usually takes responsibility for maintaining the Private Road Easement from the Whitham property at one end of the Private Road Easement down to the other end where the Private Road Easement meets the paved Rapid Lightning Creek Road.

The current dispute between the Whithams and Creamer began in August 2019, when Creamer and another nearby property owner dug a trench across the Private Road Easement some distance past Creamer's driveway, though still "located on the section of the road that is on the Creamer Property." Shortly thereafter, Creamer filled the trench with drain rocks to create a French drain.[3] After filling the drain with rocks, Creamer and the neighbor packed the rocks down to "grade the surface of the drain to make it easier for vehicles to cross over it." At trial, Creamer explained that the purpose of the drain was to help prevent erosion of the Private Road Easement by creating a course for the water to travel without causing further damage to the road. Creamer did not discuss the French drain with the Whithams prior to installing it.

About one month later, Kent used his tractor to fill in the French drain with dirt, which destroyed its function. He then smoothed the surface. Kent explained at trial "that he filled in the French drain because he anticipated that the rocks in the French drain would make it difficult for him to plow snow during the upcoming winter, because the rocks would get stuck in the plow and damage his equipment." He further "testified that with snow covering the drain, he would not be able to see the drain rocks, and because the drain is below grade, when the blade of his plow goes over the drain, it would catch on the opposite side whenever he is plowing." Both Kent and Linda Whitham testified at trial that, after Creamer had installed the French drain, neither of them had experienced any issues driving over the French drain or the Private Road Easement with their tractor or passenger vehicles.

---

[2] When necessary, the Whithams will be referred to by their first names for the sake of clarity. No disrespect is intended by doing so.

[3] A French drain is a type of water diversion device in which a shallow ditch is dug, in this case across a road, and then filled with small rocks. When the water runs down the middle of the road and perpendicular to the drain, the water is diverted to the side of the road through the French drain to avoid the creation of additional and deeper ruts in the road. (The French drain is apparently named for the man who popularized it in America in the mid-1800s—Henry French, a judge, farmer, and United States Assistant Secretary of the Treasury from Concord, Massachusetts. HENRY F. FRENCH, FARM DRAINAGE: THE PRINCIPLES, PROCESSES, AND EFFECTS OF DRAINING LAND (1859)).

After Kent filled the first drain, Creamer installed a second French drain across the Private Road Easement north of the first drain. Kent subsequently filled in this drain as well. This back-and-forth action repeated five or six times, and tensions escalated to the point that the Bonner County Sheriff's Office became involved. At one point when Kent was filling in the drain, his tractor "cut slightly into the hillside at the side of the road, and he dumped the dirt drawn from the hillside onto the road." That affected hillside is located on the portion of Creamer's property that is encumbered by the easement, and the district court found that "Kent and his equipment were at all times within the easement." The next day, the Whithams filed suit against Creamer in district court. Shortly thereafter, to prevent Kent from filling in the drain again, Creamer and a neighbor "dug out the hillside further and placed two large boulders and a cedar tree log at the side of the road near the hillside within the easement."

The Whithams sought a declaratory judgment to enforce their rights as the owners of property that is benefited by the Private Road Easement and a permanent injunction against Creamer, as owner of property that is encumbered by the Private Road Easement, to prevent Creamer from interfering with their maintenance of the Private Road Easement by re-installing a French drain. Creamer then filed several counterclaims, including claims for declaratory judgment, quiet title, trespass (both statutory and common law), waste, nuisance, and negligence. He sought injunctive relief, money damages, and attorney fees pursuant to Idaho Code sections 6-202, 6-402, 10-1210, 12-121 and Idaho Rule of Civil Procedure 54(e)(1).

After a three-day bench trial and subsequent site visit, the district court made several findings. First, the district court found that the Creamer property is burdened by an express easement—the 40-foot Private Road Easement. Neither party appeals this determination. The district court further concluded that even though the Whithams take responsibility for the maintenance of the Private Road Easement, they may not "create an additional burden on the servient estate[.]" (quoting *Fletcher v. Lone Mountain Road Ass'n*, 162 Idaho 347, 396 P.3d 1229 (2017)). The district court also found that the Whithams, in filling in the French drains, created an additional burden on the Creamer Property and, in so doing, acted negligently. Next, the district court dismissed Creamer's counterclaims for nuisance, waste, and civil trespass. The district court did not, however, make any mention of Creamer's counterclaim for common law trespass. The district court permitted Creamer to install a French drain on the portion of the easement that burdened his property and prohibited the Whithams from interfering with the French drain. Only

4

Creamer sought attorney fees; however, the district court determined that Creamer was not entitled to attorney fees.

## II.  STANDARD OF REVIEW

> Following a bench trial, this Court will not set aside a trial court's findings of fact unless they are clearly erroneous. *Turcott v. Estate of Bates*, 165 Idaho 183, 188, 443 P.3d 197, 202 (2019); I.R.C.P. 52(a)(7). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did," but instead "inquires whether the findings of fact are supported by substantial and competent evidence." *Id.* "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.* "Findings of fact that are supported by substantial and competent evidence are not clearly erroneous—even in the face of conflicting evidence in the record." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). "However, this Court exercises free review over the district judge's conclusions of law." *Turcott*, 165 Idaho at 188, 443 P.3d at 202.

*Frost v. Gilbert*, 169 Idaho 250, 262–63, 494 P.3d 798, 810–11 (2021) (quoting *Kenworth Sales Co. v. Skinner Trucking, Inc.*, 165 Idaho 938, 942–43, 454 P.3d 580, 584–85 (2019)).

## III.  ANALYSIS

Both parties timely appealed. The Whithams raise three main issues on appeal, arguing that the trial court erred in (1) finding that they damaged Creamer's property that is encumbered by the Private Road Easement by filling in the French drains, (2) finding that, in so doing, they acted negligently, and (3) concluding that because the French drains were a reasonable use of the Private Road Easement, the Whithams should be prohibited from removing the drains in the future. Creamer raises several additional issues—including that the trial court erred in failing to (1) find that Kent trespassed onto Creamer's property,[4] (2) find that Creamer was entitled to attorney fees, and (3) award additional costs[5] to Creamer to repair the French drain.

### A. The district court did not err in finding that the Whithams created an additional burden on the Creamer property.

Property owners whose properties benefit from an easement have a duty when maintaining an easement not to burden the properties that are encumbered by the easement. *Fletcher v. Lone Mountain Road Ass'n*, 162 Idaho 347, 355, 396 P.3d 1229, 1237 (2017). The district court

---

[4] Creamer has not appealed the district court's dismissal of his counterclaims for nuisance and waste.

[5] Creamer categorizes his monetary losses or entitled rewards as "costs." However, we will refer to those claims as "damages." *See Damages*, BLACK'S LAW DICTIONARY (5th Pocket ed. 2016) ("Money claimed by, or ordered to be paid to, a person as compensation for loss or injury.").

concluded that the evidence admitted at the bench trial demonstrated that the damage to the Private Road Easement had been caused by erosion and water damage. The district court also concluded that because Creamer's installation of the French drain helped to mitigate that damage, Kent created an additional burden on the Creamer property when he repeatedly filled in the drain.

On appeal, the Whithams argue that this conclusion was incorrect because Kent's maintenance of the easement was reasonable as the owner of property that is benefited by the easement, and Creamer was prohibited from "unreasonably interfer[ing] with the easement rights of a dominant estate owner." In response, Creamer cites *Fletcher* to argue that the Whithams owed a duty to Creamer, which prevented the Whithams from burdening Creamer's property by filling in the French drains. Creamer then argues that "[t]he French drain did not unreasonably interfere with the Whitham's [sic] right to ingress and egress across Creamer's property[,]" and, as a result, the installation of the drain was permissible.

*Fletcher* involved a similar set of facts to the case at bar. Property owners in a Kootenai County subdivision disputed the rights and responsibilities of each party in maintaining a private, community road. 162 Idaho at 349, 396 P.3d at 1231. Finding that the governing covenants, conditions, and restrictions were ambiguous, "the district court declared that all lot owners who used the Road [via a claim to the easement] had the right to make reasonable repairs[.]" *Id.* However, this grant was limited by the requirement that "the owner of the dominant estate [] maintain the easement so as not to create an additional burden on the servient estate." *Id.* at 355, 396 P.3d at 1237. *See also Walker v. Boozer*, 140 Idaho 451, 456, 95 P.3d 69, 74 (2004) (explaining that the property owners who benefit from the easement have a duty to maintain the easement in a way that does not "create an additional burden . . . or an interference that would damage the land, such as flooding of the servient estate") (internal citations omitted).

Here, the district court's conclusion that Kent burdened Creamer's estate by "silt[ing] in" the French drain is supported by substantial and competent evidence. In its decision, the district court emphasized that water erosion had damaged the road, and the French drain had helped prevent erosion from continuing to occur. As a result, when Kent filled in the French drain, he created an additional burden on Creamer's property. The district court referred to the testimony of neighbors who agreed that this portion of the Private Easement Road was particularly prone to damage, and the French drain did not present an additional obstacle in driving over the road. Finally, the district court concluded that because the French drain was an improvement upon the

Creamer property, Kent's filling in the drain created an unwelcome burden because it permitted additional erosion to Creamer's property. Because this conclusion is supported by substantial and competent evidence in the record, we hold that the district court did not err.

**B. The district court did not err in permitting Creamer to install French drains across the Private Road Easement nor in prohibiting the Whithams from interfering with those installations.**

In declaring the rights of each of the parties, the district court relied on *Ruddy-Lamarca v. Dalton Gardens Irrigation District*, 153 Idaho 754, 758, 291 P.3d 437, 441 (2012) to explain "the correlative rights" of property owners whose properties are either benefited or encumbered by an easement. (quoting *id.*). The district court concluded that Creamer

> is entitled to use his property in any manner not inconsistent with, or which does not interfere with, the use and enjoyment of the Private Road Easement by the dominant estate owners, the Whithams; and the Whithams owe a corresponding duty to [Creamer] to minimize the impact of their enjoyment of the Private Road Easement upon the Creamer Property.

The district court further ordered that Creamer be allowed "to install French drains that are 1 to 1½ inch[es] below grade, using 2 inch drain rocks, along the stretch of the [Private Road Easement] on the Creamer Property[,]" and the Whithams may continue to maintain the Private Road Easement as they have in the past, "except for filling in the French drain[.]"

The Whithams argue that these conclusions are erroneous because Creamer's right to use the Private Easement Road is "'junior' to the easement rights held by the dominant estate owners [*i.e.*, the Whithams]." That is, the Whithams argue, Creamer may not use his property in such a way that "unreasonably interfere[s] with the easement rights of a dominant estate owner." The Whithams also contend that the French drain is inconsistent with the original purpose of the Private Road Easement.

Creamer argues in response that the Whithams failed to explain how his installation of the French drain interfered with their maintenance and use of the Private Road Easement. Creamer points to the district court's findings that "at the time [Kent] filled in the drain, he had not experienced any of these problems[.]" Therefore, Creamer asserts, the district court's declaration of rights was correct because the Whithams failed to prove at trial that Creamer's installation of French drains in any way impaired the Whithams' use of the Private Road Easement.

In making their argument, the Whithams cite to and rely on *Rehwalt v. American Falls Reservoir District Number 2,* 97 Idaho 634, 636, 550 P.2d 137, 139 (1976), but their reliance on

7

*Rehwalt* is misplaced. In *Rehwalt*, this Court explained that the duty of property owners whose use of their property is aided by the use of an easement does not extend to maintenance of the easement for the *benefit* of property owners whose property is encumbered by the easement. *Id.* There, Eunice Rehwalt was driving a grain truck along a right-of-way next to a canal when "the edge of the road gave way and the truck toppled into the canal." *Id.* at 635, 550 P.2d at 138. The Rehwalts and other property owners whose properties were encumbered by the easement subsequently filed suit against the local reservoir district, alleging that it had been negligent in its maintenance of the easement. *Id.* This Court held that the reservoir district did not owe a heightened duty—*i.e.*, a benefit—to the Rehwalts and other similarly situated property owners; it only owed the more general duty to maintain the easement for *use* by the property owners whose properties were either benefited or encumbered by the easement. *Id.* at 636, 550 P.2d at 139. *See also Fletcher*, 162 Idaho at 355, 396 P.3d at 1237 ("That duty requires the easement owner maintain, repair, and protect the easement so as not to create an additional burden on the servient estate or an interference that would damage the land[.]"). This Court explained that because the reservoir district would be able to "exclude the servient landowner altogether when it is necessary for the protection of the easement[,]" then it would not make sense for the reservoir district to be required to provide a benefit to the property owners whose properties were encumbered by the easement. *Id.* However, the duty of the property owner whose property is benefited by the easement still "requires . . . maint[enance] [of] the easement so as to not create an additional burden on the servient estate." *Id.*

The Whithams' reliance on *Morgan v. New Sweden Irrigation District*, 156 Idaho 247, 322 P.3d 980 (2014) is similarly misplaced. They argue that *Morgan* stands for the proposition that the rights of property owners whose properties are encumbered by the easement are "junior" to those of the property owner who benefits from the easement. However, in *Morgan*, we said only that property owners whose properties are encumbered by the easement may not unreasonably interfere with other easement users' enjoyment of the easement, not that property owners whose properties are benefited by the easement enjoy some sort of "superior access" to the easement. *Id.* at 256, 322 P.3d at 989. That holding does not preclude property owners whose properties are encumbered by the easement from making other improvements, especially those that have been found to be reasonable by a district court.

"Generally, in determining whether to grant a declaratory judgment, the criteria is whether

it will clarify and settle the legal relations at issue, and whether such declaration will afford a leave from uncertainty and controversy giving rise to the proceeding." *Schneider v. Howe*, 142 Idaho 767, 773, 142 Idaho 767, 773 (2006) (quoting *Miles v. Idaho Power Co.*, 116 Idaho 635, 642, 778 P.2d 757, 764 (1989)) (internal quotation marks omitted). The parties do not dispute that the district court was within its authority to issue this declaration of rights and responsibilities. The district court's declaration fits squarely within the easement holders' respective duties described in the preceding sections. Therefore, the district court did not err in authorizing Creamer to install French drains across the portions of the Private Road Easement that run through his property, nor did it do so in prohibiting the Whithams from interfering with those installations. Any error on this issue ascribed to the district court by the Whithams is rejected.

### C. The district court did not err in finding that the Whithams acted negligently.

Next, the district court found that Kent Whitham acted negligently in filling in the French drain. The district court explained that, as the property owners whose property is benefited by the use of the Private Road Easement, the Whithams owe a duty to those property owners whose properties are encumbered by the Private Road Easement (including Creamer and the rest of the neighbors who use the Private Road Easement) not to increase the burden on their properties. However, the district court found that when Kent Whitham filled in the French drain, he breached that duty. Additionally, the district court determined that this conduct caused the destruction of the drain, and Creamer had suffered damages in the amount of $76.00—the cost of the rock used to install the drain.

The Whithams argue that this holding was incorrect because the road has always suffered from water erosion and runoff, so "Creamer cannot argue that the original condition of the travelway constitutes an additional burden or 'damage' to his property." Relying on *Coulsen v. Aberdeen-Springfield Canal Company*, 47 Idaho 619, 277 P. 542 (1929), the Whithams argue instead that their duty should be limited to not damaging property outside the easement and that they may dictate the best way to maintain the easement. The Whithams also argue that property owners whose property benefits from the easement may exclude other landowners' access to the easement when the other landowners are acting in a manner that "is inconsistent with the primary purpose of the easement." (quoting *Rehwalt*, 97 Idaho at 636, 550 P.2d at 139) (internal quotation marks omitted).

In response, Creamer argues that he "is entitled to make improvements to the easement

9

upon his property so long as they do not materially interfere with the Whitham's [sic] ability to have ingress and egress to their property." Therefore, Creamer maintains, because the Whithams testified that they did not have any trouble crossing the French drain, they are unable to show that Creamer materially interfered with their use of the easement.

"A showing of negligence requires: (1) a duty recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 650, 39 P.3d 588, 590 (2001) (internal quotation marks and citations omitted). The determination of whether a duty exists is a question of law, but breach and proximate cause are questions of fact. *Id.*

The duty of the property owner whose property benefits from the easement is two-fold: (1) to maintain the original easement and (2) to not unreasonably burden properties that are encumbered by the easement. In *Coulsen*, a farmer sued a canal company after his land around the canal was flooded, alleging that the company had been "negligent in failing to control the flow of water in the ditch" and, in that failure, had allowed the flow of water to cause damage. 47 Idaho at 620, 277 P. at 543. This Court explained that the canal company had a duty not only to maintain the canal "in substantially its original condition" but also "to impose upon the servient estate no unnecessary burden[.]" *Id.* at 622–23, 277 P. at 545–46. The Whithams' reliance on this case is misplaced because they disregard the second requirement of property owners benefiting from their use of the easement—a prohibition against unreasonably burdening the easement, including where the easement encumbers portions of other properties.

Here, Kent's intentional actions of filling in the French drain created an additional burden on Creamer's property because it subjected the portion of the Private Easement Road located on Creamer's property to damage from erosion. *Coulsen* explains that the maintenance of the easement by the property owner whose property benefits from the easement must not further burden the property owners whose property is encumbered by the easement. Creamer's installation of the French drains was an attempt to prevent erosion of the portion of the Private Road Easement that is on his property. Multiple witnesses testified at trial that not only did this mechanism help maintain the road, but it also did not interfere with their use of the Private Easement Road. Consequently, we find no error in the district court's determination that Kent's filling in the drain created an additional burden on Creamer's property.

10

For the reasons discussed above and in Section A, the Whithams owed a duty to Creamer not to create an additional burden on Creamer's property. *See, e.g.*, *Fletcher*, 162 Idaho at 355, 396 P.3d at 1237. The district court's finding that Kent Whitham breached that duty is supported by substantial and competent evidence. Kent did not dispute that he filled in the drain on multiple occasions. The district court found this conduct to be a breach of duty because in filling in the drain, Kent unnecessarily burdened Creamer's property by frustrating Creamer's reasonable attempts to reduce erosion. Similarly, Kent caused damage to the drain when he filled it. Accordingly, we hold that the district court did not err in finding that the Whithams acted negligently.

**D. The district court erred in failing to award adequate damages to Creamer to repair the French drain.**

We next turn to the question of damages for Kent's negligent conduct. Creamer did not pay for labor to install the French drains. As a result, the district court found that Creamer's damages were limited to the price of the rock used to fill in the drain—$76.00. We conclude that the district court erred by not awarding Creamer sufficient damages to repair the French drain, and by limiting its award to $76.00 for the cost of the drainage rocks used to install the original drain.

Creamer relies on this Court's decision in *Ransom v. Topaz Marketing, L.P.* for his argument that he is entitled to the cost of repair and injunctive relief. 143 Idaho 641, 152 P.3d 2 (2006). Creamer argues that the district court's award of $76.00 (the cost of two truckloads of drainage rock) was inadequate because it does not restore Creamer to the position that he would be in with a fully functioning French drain. In response, the Whithams argue that Creamer's recovery should be limited to that allowed for statutory trespass, and since the district court did not find that the Whithams had trespassed onto Creamer's property, no additional recovery is appropriate. In the alternative, the Whithams argue that the district court's award of $76.00 was appropriate because that was the total cost of Creamer's out-of-pocket expenditures to install the original drain.

We agree with Creamer that, as with most negligence suits, the proper recovery is the amount that would restore one's property to its pre-damaged condition. *See, e.g.*, *Brian and Christie, Inc. v. Leishman Elec., Inc.*, 150 Idaho 22, 29, 244 P.3d 166, 173 (2010). In *Ransom*, the property owner whose property benefited from the use of the easement sued the property owner whose property was encumbered by the easement for trespass and damages after the property owner whose property benefited from the use of the easement rerouted an easement to "conform

11

to the legal description" in the original agreement. 143 Idaho at 643, 152 P.3d at 4. Regarding the question of damages, this Court distinguished between temporary and permanent injury and concluded that, for temporary injuries, the proper recovery is "the amount necessary to put the land in the condition it was immediately preceding the injury." *Id.* at 645, 152 P.3d at 6 (internal citations omitted).

Here, Creamer has successfully demonstrated that Kent was negligent and caused an additional burden on the portion of the Private Road Easement on Creamer's property when he filled in the French drain. Uncontradicted testimony at the trial established that the cost to repair the French drain to the property's pre-damaged state was $1,375.00. Despite this uncontradicted testimony, the district court limited Creamer's award to his out-of-pocket expenses, rather than any compensatory damages that would be necessarily incurred in bringing the easement back to its state before Kent's negligent intervention.

The proper "measure of damages for injury to land" when "the land is temporarily but not permanently injured [is] . . . the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial." *Nampa & Meridian Irrigation Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003) (quoting *Young v. Extension Ditch Co.*, 13 Idaho 174, 182, 89 P. 296, 298 (1907)). A temporary injury is one where "the cause of the injury is abatable or preventable and the injury [is] capable of rectification by reasonable restoration, i.e., not exceeding the damage to the property, the injury will be considered temporary and not permanent." *Id.* (quoting *Alesko v. Union Pac. R.R. Co.*, 62 Idaho 235, 241, 109 P.2d 874, 877 (1941)) (internal quotation marks omitted). This Court further explained that "the goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered[.]" *Id.* For example, the Second Restatement of Torts provides:

> If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for (a) the difference between the value of the land before the harm and the value after the harm, *or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,* (b) the loss of use of the land, and (c) discomfort and annoyance to him as an occupant.

*Weitz v. Green*, 148 Idaho 851, 865, 230 P.3d 743, 757 (2010) (quoting REST. (SECOND) OF TORTS § 929 (1979) (italics added)). At its core, "the law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort." *Id.* (quoting

REST. (SECOND) OF TORTS § 901 cmt. a (1979)) (alteration and internal quotation marks omitted). Therefore, as implied in *Weitz* and again in this case, we adopt section 929 of the Second Restatement of Torts for its guidance in calculating damages to restore property to its previous state.

At trial, Creamer presented uncontradicted testimony establishing that the cost to repair the French drain was $1,375. None of the cases above require that there be a transaction or monetary expenditure prior to recovery. As a result, we hold that the district court erred in limiting its award to $76.00 because Creamer is entitled to the full cost of repair of the French drain, rather than just his out-of-pocket expenses for installing the drain. Based on the evidence presented at trial, an award of out-of-pocket expenses would not restore the portion of the Private Road Easement on Creamer's property to the condition it was in before Kent's tortious actions.

**E. The district court did not err by failing to address the common law trespass claim because it was subsumed by Creamer's negligence claim, nor did the district court err in dismissing Creamer's claim against the Whithams for statutory trespass.**

Creamer also brought two trespass counterclaims against the Whithams. These involved claims of common law trespass and statutory trespass in violation of Idaho Code section 6-202. Each will be analyzed in turn.

1. Common Law Trespass

Trespass on the case can be used synonymously with Creamer's claim for common law trespass. Trespass on the case preceded the legal theory of negligence. Over time, negligence jurisprudence has essentially absorbed actions for trespass on the case,[6] and here, Creamer's common law trespass claim is now duplicative of and subsumed by his negligence claim. *See, e.g.*, Jean Elting Rowe & Theodore Silver, *The Jurisprudence of Action and Inaction in the Law of Tort: Solving the Puzzle of Nonfeasance and Misfeasance from the Fifteenth through the Twentieth Centuries*, 33 DUQ. L. REV. 807, 833 (1995). The general rule for liability in common law trespass based on negligent entry is that when the defendant has a lawful right to be on the land (such as on an easement), then the defendant will only be liable for actual damages when the plaintiff can demonstrate that the defendant was "negligent in causing the harm." DOBBS ET AL., § 50.

---

[6] *See also* RESTATEMENT (THIRD) OF TORTS: PHYSICAL AND EMOTIONAL HARM § 6 (2010) ("[W]ithin the common-law writ system, negligence was the typical standard of liability when the plaintiff pleaded trespass on the case."); RESTATEMENT (FIRST) OF TORTS div. 1, ch. 7, topic 2 Scope Note (1934) ("[I]f the intrusion resulted indirectly from a tortious act of the defendant, the appropriate action was trespass on the case.").

Here, Creamer successfully demonstrated that Kent was negligent in filling in the French drain, thereby causing harm to Creamer's property. Therefore, an additional finding of common law trespass would be duplicative. As a result, the district court did not err in failing to address Creamer's claim for common law trespass.

### 2. Statutory Trespass

We next address the statute at issue for Creamer's statutory trespass claim, Idaho Code section 6-202(2)(b). The district court addressed Creamer's claim for civil trespass under Idaho Code section 6-202.[7] The district court concluded that the Whithams have a legal right to utilize the Private Road Easement, and on all occasions giving rise to this dispute, Kent was acting within the easement. Therefore, the district court held that Creamer's counterclaim for civil trespass failed and dismissed it.

Creamer argues on appeal that this finding is incorrect because the Whithams use of the easement is restricted to "ingress, egress, or maintenance," and any acts outside of those limitations, including filling in a French drain and digging into the hillside on the side of the Private Road Easement within Creamer's property, constitute statutory trespass. Therefore, Creamer posits, the district court incorrectly limited its analysis to determining *where* the Whithams were in relation to the easement rather than *how* they were using the easement. Similarly, Creamer argues that Idaho Code section 6-202 prohibits the Whithams' presence on his "property for any purpose beyond the scope of the easement which is held[,]" and Kent's filling in the French drain and digging into the mountainside were an "intentional destruction of improvements[.]" Creamer contends that, because the district court specifically found in its negligence analysis above that Kent had unreasonably burdened the portion of the Private Road Easement on Creamer's property, it necessarily follows that Kent also trespassed. Finally, under section 6-202, Creamer argues that he is entitled to treble damages and reasonable attorney fees.

In response, the Whithams argue that the district court did not err in dismissing Creamer's counterclaims for statutory trespass because evidence was admitted at trial establishing that, at all times when filling in the drain, Kent was within twenty feet of the centerline of the Private Road Easement, and, therefore, was not acting outside the easement. The Whithams also argue that it is not unprecedented for a trial court to award damages for negligent conduct but decline to award

---

[7] In its Amended Memorandum Decision and Order, the district court determined that Idaho Code section 6-202 "governs actions for *civil* trespass[.]" (Italics added.) This case does not present a substantive difference between "civil" and "statutory" trespass. Therefore, we discuss section 6-202 in our *statutory* trespass analysis.

14

damages for trespass.

Idaho Code section 6-202 provides in relevant part:

(2)(b) Acts constituting civil trespass with damage. A person commits a civil trespass with damage when he enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted, and causes damage to real or personal property in excess of one thousand dollars ($1,000). A person has reason to know that his presence is not permitted on real property that meets any of the following descriptions:

(i) The property is reasonably associated with a residence or place of business[.]

However, the statute continues with an exception:

(7) A person has not committed the act of civil trespass under this section for entering or remaining upon real property if the person entered or remained on the property pursuant to any of the following rights or authorities:

(a) An established right of entry or occupancy of the real property in question, including, but not limited to:

. . .

(iii) A lease, easement, contract, privilege or other legal right to enter, remain upon, possess or use the real property[.]

I.C. § 6-202(7)(a).

In this case, the district court concluded (and it is undisputed) that the intention of the original parties was clear—to create an express, "forty (40) foot wide easement for ingress, egress and utilities over and across the existing access road[.]" The district court found that, because "[t]he Whithams have a legal right to enter, remain upon, or use the Creamer Property for ingress and egress within the 40 foot wide Private Road Easement[,]" they qualify for an exception to statutory trespass when doing so. Idaho Code section 6-202(7)(a)(iii) says that a party will not be liable for civil trespass when the party has "[a]n established right of entry . . . including . . . [an] easement[.]" We agree with the district court.

We will not disturb the district court's factual finding that Kent was within the easement, as it is supported by substantial and competent evidence within the record. As a result, the district court's finding that Kent was within the easement at all times and is not liable for statutory trespass is supported by the exception provided in Idaho Code section 6-202(7). A party will not be liable for trespass when he is in a place where he has a lawful right to be, including an easement. I.C. § 6-202(7)(a)(iii). Creamer's argument that purported unreasonable behavior constitutes a statutory trespass cannot be squared with the plain exception in subsection seven, which does not limit its

application with a requisite finding of "reasonable use." As a result, we affirm the district court's dismissal of Creamer's claim for statutory trespass because the district court concluded that "while Kent was filling in the French drain, both he and his equipment were at all times within the easement."

**F.  Because Creamer's claim for statutory trespass was properly dismissed, we affirm the district court's refusal to award attorney fees to Creamer.**

We now turn to the question of attorney fees. Finding no prevailing party below, the district court determined that each party would bear their own costs and attorney fees. On appeal, Creamer argues that Idaho Code section 6-202 provides a basis for reasonable attorney fees. The Whithams argue that the district court was within its discretion to find that there was no prevailing party, and therefore its refusal to award attorney fees to Creamer should be upheld. As noted in the prior section of this opinion, the district court properly dismissed Creamer's claim for statutory trespass under section 6-202(7). This decision by the district court eliminated section 6-202 as a proper basis to recover attorney fees. Because Creamer does not have a successful claim for statutory trespass, we cannot hold that the district court erred in refusing to award attorney fees on that basis.

**G.  We decline to award attorney fees to Creamer on appeal. We award Creamer his costs on appeal.**

Creamer next argues an entitlement to attorney fees under Idaho Code sections 6-202 and 12-121 on appeal. The Whithams have not sought attorney fees on appeal.

As discussed above, Idaho Code section 6-202 only provides a basis for attorney fees for successful statutory trespass claims. Creamer did not prevail on this issue, so section 6-202 is not an appropriate basis for him to seek attorney fees on appeal.

Idaho Code section 12-121 provides for an award of attorney fees when a case is pursued frivolously, unreasonably, or without foundation. Given the need to clarify the duties and rights of property owners whose properties are either benefited or encumbered by an easement, we do not find that the Whithams pursued this case frivolously, unreasonably, or without foundation. Therefore, Creamer is not entitled to attorney fees pursuant to Idaho Code section 12-121. Creamer is the prevailing party because he has prevailed on a majority of the issues. As a result, he is entitled to an award of costs.

## IV.  CONCLUSION

For the reasons discussed above, we affirm in part and vacate in part the judgment of the district court. We affirm the district court's findings that the Whithams created an additional

16

burden on the Creamer property and acted negligently when Kent filled in the French drain. However, we vacate the district court's failure to award damages to Creamer to repair the French drain. The testimony at trial indicated that $1,375 was the amount necessary for Creamer to repair the drain and neither party disputes this determination on appeal. Therefore, we remand the case to the district court to award damages to Creamer consistent with the uncontradicted evidence admitted at trial.

Next, we affirm the district court's declaratory judgment permitting Creamer to install French drains across the portions of the Private Road Easement that run through his property and prohibiting the Whithams from interfering with those installations.

We affirm the district court's failure to address Creamer's common law trespass claim because the claim was subsumed by the negligence claim, and we affirm its dismissal of Creamer's statutory trespass claim because Kent was within the easement when he filled in the French drain. We similarly affirm the district court's refusal to award attorney fees under Idaho Code section 6-202, since Creamer did not prevail on his claim for statutory trespass.

Additionally, we deny Creamer attorney fees under section 12-121 because the Whithams did not bring or pursue this case frivolously, unreasonably or without foundation. However, because Creamer is the prevailing party, he is entitled to an award of costs on appeal. We remand the case for further proceedings consistent with this opinion.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.